UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JACQUELINE BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-CV-019 NAB |
| | ) |
| KILOLO KIJAKAZI[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jacqueline Brooks' appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand for further proceedings.

**I.      Background**

On April 30, 2018, Brooks applied for DIB and SSI, alleging that she had been unable to work due to disability since June 14, 2017. (Tr. 138, 243-250.) Brooks alleged disability due to

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

arthritis in knees, back, thumbs; carpal tunnel in both hands; fibromyalgia; tendonitis; bursitis; sleep apnea; severe anxiety; severe depression; and osteoarthritis in left knee. (Tr. 138.) Her application was initially denied and she filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 169, 170, 180-81.) On February 6, 2020, the ALJ held a hearing on Brooks' claim. (Tr. 90-124.) Brooks was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on March 20, 2020, the ALJ found Brooks was not disabled as defined in the Act from the alleged onset date through the date of the decision. (Tr. 33.) On April 13, 2020, Brooks filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 240-42.) While the claim was pending before the Appeals Council, Brooks submitted additional evidence from before and after the date of the ALJ's decision. (Tr. 2, 8-13, 40-89.) On December 1, 2020, the Appeals Council denied Brooks' request for review, and adopted the ALJ's decision in full. (Tr. 1-3.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Brooks met the insured status requirements of the Social Security Act through March 31, 2022, and that she had not engaged in substantial gainful activity since June 14, 2017, the alleged onset date. (Tr. 22.) Next, the ALJ found that Brooks has the following severe impairments: degenerative disc disease/stenosis of the lumbar spine; osteoarthritis of the bilateral knees with right meniscal tear; bilateral carpel syndrome/osteoarthritis status-post releases; fibromyalgia; diabetes; obesity;

depression; anxiety; and schizophrenia. The ALJ found that Brooks' bilateral shoulder tendonitis/bursitis, insomnia, Vitamin D deficiency, cardiomegaly, headaches, obstructive sleep apnea, anemia, GERD, fatty liver, cortical thinning of kidneys, dysphagia, vision loss including vitreous floaters, migraines, hyperlipidemia, and urinary incontinence were not severe medical impairments. (Tr. 22.)

The ALJ determined that Brooks did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Brooks had the residual functional capacity to perform light work with additional limitations. Specifically, the ALJ found that

> She can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant can frequently handle and occasionally finger bilaterally. The claimant can occasionally use foot controls bilaterally. The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.

(Tr. 25.) The ALJ found that Brooks was unable to perform any past relevant work. (Tr. 31.) Brooks was 47 years old on the alleged disability onset date and considered a younger individual age 18-49. She subsequently changed age category to closely approaching advanced age. She has at least a high school education and is able to communicate in English. The ALJ determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. (Tr. 31.) Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national economy that Brooks can

4

perform, including folder (Dictionary of Occupational Titles (DOT) No. 369.687-018, light exertion level, approximately 250,000 jobs in the national economy), sorter (DOT No. 361.687-014, light exertion level, approximately 93,000 jobs in the national economy), and cleaner (DOT No. 323.687-014, light exertion level, approximately 200,000 jobs in the national economy). (Tr. 32.) Therefore, the ALJ concluded that Brooks was not disabled, as defined in the Act, from June 14, 2017, through March 25, 2020. (Tr. 33.)

### IV.     Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es]

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.     Discussion**

Brooks challenges the ALJ's mental RFC finding. Specifically, Brooks contends that her mental impairments make it difficult for her to interact with others, and the ALJ erred in failing to resolve the conflict between APRN Carlyle's opinion regarding moderate social limitations and the mental RFC's omission of any social limitations.

At Step 3, the ALJ found Brooks had only a mild limitation in interacting with others, explaining:

> The claimant reported that she shops in stores, such as Walmart or Family Dollar, attends church, sings in church, spends time with people, and has no problem getting along with family, friends, neighbors, or authority figures.

(Tr. 24.) Then, in making an RFC determination, the ALJ found that

> [T]he claimant's depression, anxiety, and schizophrenia cause moderate difficulties with understanding, remembering, or applying information; concentration, persistence or maintain pace; and adapt and manage oneself that result in limitations, including able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and only with occasional judgment and work place changes. Considering all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.

(Tr. 31.) Although the ALJ stated he considered all relevant factors, he did not specifically discuss whether he considered any limitations in interacting with others.

Brooke Carlyle, APRN, completed a form titled "Medical Source Statement – Mental" and dated for February 6, 2020. (Tr. 1614-1615.) In the form, APRN Carlyle lists Brooks' mental diagnoses as "major depressive disorder, recurrent, moderate" and "generalized anxiety disorder." (Tr. 1614.) The remainder of the two-page form is questions with check box options as answers. APRN Carlyle opined that Brooks would have bad days that cause the need to leave work approximately 2 days per month, and that she would be off task approximately 5% of the time. The remainder of the form was broken down into the four broad areas of functioning, with specific activities listed under the umbrella of each of the four areas. For the understanding and memory section, APRN Carlyle found Brooks to be mildly limited in two activities, and moderately limited in one (the ability to understand and remember detailed instructions). For the eight activities in the sustained concentration and persistence category, APRN Carlyle found Brooks to be mildly limited in four activities, moderately limited in three activities, and markedly limited in one activity (the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods). For the adaptation category, APRN Carlyle found Brooks to be mildly limited in two activities, moderately limited in one activity, and markedly limited in one activity (the ability to travel in unfamiliar places or use public transportation). For the social interaction category, APRN Carlyle found Brooks to be mildly limited in the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. She found Brooks to be moderately limited in the ability to accept instructions and respond

7

appropriately to criticism from supervisors and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

The ALJ found APRN Carlyle's opinion to be "partially persuasive." The ALJ explained that APRN Carlyle opined that Brooks would miss 2 days of work per month and has marked limitation in her ability to complete a normal workday and workweek without interruption from psychological symptoms, along with numerous mild to moderate limitations. He explained:

> This assessment is partially persuasive because the medical record does support the claimant has severe psychiatric impairments that limit. However, marked limitations in concentration, persistence and pace, and adaptation, as well as being off task and absences are inconsistent with the routine mental status examinations and progress notes of the claimant's mental health treatment providers at Bootheel Counseling Services, discussed above, which reflect just mild to moderate abnormalities. There is no objective support for such restrictive limitations and APRN Carlyle did not provide such support on the medical source statement itself.

(Tr. 30.) This discussion is silent as to whether APRN Carlyle's opinion regarding the mild to moderate social limitations is persuasive. Therefore, the Court cannot discern from this explanation whether the ALJ agreed with the moderate limitations opined by APRN Carlyle. Perhaps the only reasonable interpretation is that the ALJ found the remainder of the opinion unrelated to the marked limitations in concentration, persistence and pace and adaptation to be persuasive. If this is the case, then the ALJ may have included limitations in interacting with others in the RFC. Nevertheless, the error is in the lack of clarity. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding, where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis to remand.").

The only other opinion evidence regarding Brooks' mental RFC was that of state agency psychological consultant Mark Altomari, Ph.D. Dr. Altomari assessed in August 2018 that Brooks

8

had a mild limitation in interacting with others. (Tr. 143.) He noted that although Brooks reports no limitations with daily activities due to a mental impairment, she reports difficulty with completing tasks and concentration on the checklist. She also reports difficulty getting along with others, but frequently goes to church and shops. He opined that based on the totality of the evidence before him, Brooks was capable of completing simple, repetitive tasks. (Tr. 144.) In the ALJ's discussion, he stated that Dr. Altomari assessed that Brooks "is capable of understanding simple to moderate complex tasks and instructions" and found "[t]his assessment is persuasive because it is consistent with and supported by routine mental status examinations and progress notes," and "is consistent with Brooks' self-reported daily activities." (Tr. 30.) The ALJ did not specifically discuss Dr. Altomari's assessment regarding her mild limitation in interacting with others.

The ALJ's discussion of specific evidence must allow for meaningful review. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (citing *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("[A] remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."). Here, the ALJ did not explain whether he found APRN Carlyle's opinion regarding the moderate limitations in social interaction to be persuasive, nor did he cite to specific evidence to support the conclusion that the opinion was partially persuasive. Without additional explanation, it is unclear to what extent the ALJ was persuaded by Carlyle's opinions, or to what extent such findings formed the basis of Brooks' RFC.

The undersigned is mindful that "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). The record contains little evidence to suggest whether she has difficulty interacting with others. In her function report, Brooks states that she doesn't like being in crowds, but she has

9

no problem getting along with people, and that she gets along well with authority figures. (Tr. 307-309.) When asked to check the box for which items are affected by her injuries or conditions, Brooks checked 15 of the 19 boxes listed, but notably did not check "Getting Along with Others" as an issue. (Tr. 308.) At the hearing before the ALJ, Brooks was represented by counsel. Neither Brooks nor her attorney raised any issues with interacting with others in their discussion with the ALJ. Brooks' attorney had the opportunity to examine her, and he did not ask any questions regarding social interaction. (*See* Tr. 107-115.) Similarly, when her attorney examined the vocational expert, he did not pose a hypothetical regarding social interaction limitations. (*See* Tr. 122-123.) A claimant's failure to provide evidence supporting an alleged limitation should not be held against the ALJ when there is medical evidence that supports the ALJ's decision. *See Steed v. Astrue,* 524 F.3d 872, 876 (8th Cir. 2003). It is possible that the ALJ properly evaluated APRN Carlyle's opinion and disregarded the moderate limitation in interacting with others for valid reasons supported by substantial evidence. However, the ALJ's decision does not include any such discussion, and the Court cannot speculate whether or why an ALJ rejected certain evidence. Given the absence of explanation and the ALJ's failure to explain which portions of APRN Carlyle's opinions were persuasive (as opposed to unpersuasive), remand is appropriate. *See Willcockson v. Astrue*, 540 F.3d 878, 879-80 (8th Cir. 2008) (finding that while errors and uncertainties in opinion might not individually warrant remand, combination created doubt about ALJ's rationale and required remand).

Further, the ALJ's error does not appear harmless. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Here, the jobs the ALJ identified that Brooks was capable of performing

10

are a folder, sorter, and cleaner. (Tr. 32.) The vocational expert did not discuss how much interaction with others is required in these positions; however, the job of cleaner is described in the Dictionary of Occupational Titles as one who cleans rooms and halls in commercial establishments such as hotels and restaurants, and whose duties may include "render[ing] personal assistance to patrons." Thus, it appears likely that, had the ALJ included a social interaction limitation in the RFC, the outcome of the disability determination might have been different.

For these reasons, the Court finds that this case must be remanded for further consideration of the opinion evidence and the reasons for accepting or rejecting the limitations therein.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 16.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

NANNETTE A. BAKER  
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of December, 2022.